IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DONNA E. JOHNSTON,                :

    Plaintiff,                          :

vs.                                                                      CA 05-0013-WS-C

                                                  :

JO ANNE B. BARNHART,
Commissioner of Social Security,  :

    Defendant.                      :

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income benefits. This action has been referred to the Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of the administrative record, plaintiff's proposed report and recommendation, the Commissioner's proposed report and recommendation, and the parties' arguments at the August 8, 2005 hearing before the undersigned, it is determined that the decision to deny benefits should be reversed and this cause remanded for further consideration not inconsistent with this decision.

Plaintiff alleges disability due to dysthymic disorder, personality

disorder with borderline features, back pain, asthma and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> 3. The claimant has not proven that she has any severe physical impairment.
>
> 4. The claimant has severe mental impairment(s) of Cocaine Abuse, by history, Opioid Abuse, by history, Anxiolytic and Sedative Abuse, by history, Dysthymic Disorder, by history, and Personality Disorder, NOS with borderline features. She does not, however, have an impairment or combination of impairments, which meet or equal any impairment or combination of impairments listed in Appendix 1, Subpart P, Regulations No. 4.
>
> 5. The undersigned finds that the claimant's mental residual functional capacity is limited to unskilled [work] with only occasional interaction with the general public.
>
> 6. With that capacity, she can perform a significant number of jobs, which were identified by administrative notice of reliable job information.
>
> 7. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR 416.920(e)).

(Tr. 31) The Appeals Council affirmed the ALJ's decision (Tr. 4-6) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In supplemental security income cases where the claimant has no past vocationally-relevant work, as here, it is the Commissioner's burden to prove

2

that the claimant is capable of performing work which exists in significant numbers in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). The ALJ's articulation of specific jobs the claimant is capable of performing must be supported by substantial evidence. *Id*. (citation omitted). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[1]

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those jobs the ALJ administratively noticed, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view

---

[1] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The claimant contends that the ALJ committed reversible error by: (1) failing to find she has a severe physical impairment; (2) failing to obtain testimony from a vocational expert; (3) failing to grant controlling weight to the opinion of her treating physician; (4) failing to proffer additional evidence that was obtained after the hearing; and (5) failing to order a consultative orthopedic examination. Because it is found that the ALJ erred in failing to obtain vocational expert testimony, this Court need not address the other issues raised by plaintiff. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants a reversal,' we do not consider the appellant's other claims.").

It is clear in this circuit that the Commissioner of Social Security must develop "a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989) (citation omitted). As alluded to earlier, the Commissioner must articulate specific jobs that the claimant can perform given her age, education and work history, if any, "and this finding must be supported by substantial evidence, not mere intuition or conjecture." *See id.* (citation omitted) One means by which

4

the Commissioner can satisfy her burden in this regard is by reliance upon the Medical-Vocational Guidelines (the "grids). *See id*. Exclusive reliance upon the grids is inappropriate, however, ""either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills."" *Id*. at 1202 (quoting *Walker, supra,* 826 F.2d at 1002-1003, in turn quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985)).

In this case, the ALJ totally eschewed the grids; he did not even rely on those guidelines as a framework for decision making.[2] (Tr. 30-31)

> In meeting the Commissioner's burden to demonstrate that there exists work in significant numbers in the national economy, the undersigned has not found that a Grid Rule directs a decision because there are non-exertional limitations involved. See 20 CFR 416.969. There is no need to seek the opinion of a vocational expert because there is no issue regarding transferable skills or "a similarly complex issue." See 20 CFR 416.966(e); SSR 00-4p. While the United States Court of Appeals for the 11th Circuit has noted in the past that the "preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert," MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986), reliable vocational evidence (as opposed to testimony) taken from official government sources is a permissible functional equivalent when the issue presented can be resolved by a simple,

---

[2] *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) ("If nonexertional impairments exist, the ALJ may use [the] Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of existence of jobs in the national economy that the claimant can perform.").

mechanical process. For example, determining whether a claimant's residual functional capacity would be sufficient to perform an occupation described in the Dictionary of Occupational Titles (DOT) is a simple exercise in which the skill level and capabilities in the residual functional capacity are compared with the requirements detailed in the DOT. See SSR 00-4p. When the comparison shows no conflict or discrepancy, clearly no expert vocational testimony or judgment is needed.

In the instant case, there are no complicated or complex vocational issues that warrant expert testimony. Rather, it is a case in which it is appropriate to take administrative notice of reliable job data to determine: 1) whether there are occupations that the claimant can perform with her residual functional capacity and 2) whether such work exists in significant numbers in the national economy. See 20 CFR 416.966(d). The DOT has been used for the description of the jobs, including worker functions, exertional requirements, and skill levels. The Commissioner has found that each sedentary and light unskilled job found in the DOT "represents numerous jobs found throughout the national economy."

With the claimant's residual functional capacity, she can perform the following jobs: 1) Cleaner-Housekeeping DOT # 323.687-014. It is a light, unskilled job that requires no significant interaction with the general public. There are 948,230 such jobs in the national economy. 2) Sorter, Agricultural Produce, DOT # 529.687-186. It is a light, unskilled job with no significant interaction with the general public. There are 56,210 such jobs in the national economy. 3) Kitchen Helper, DOT # 318.687-010. It is a medium, unskilled job with no significant interaction with the general public. There are 505,000 such jobs in the national economy. Clearly, there is work in the national economy that exists in significant numbers and that is within the claimant's residual functional capacity.

(*Id*.) There are problems with this analysis, however, and these problems

necessitate a remand to the Commissioner for vocational expert testimony.

6

While the ALJ correctly noted in the foregoing discussion that the Eleventh Circuit in *MacGregor v. Bowen*, 786 F.2d 1050 (11th Cir. 1986) stated that "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert[,]" *id*. at 1054; *see also Francis*, 749 F.2d at 1566 ("The preferred method of demonstrating job availability when the grids are not controlling is through expert vocational testimony."), he failed to note that such preference for vocational expert testimony has effectively become a requirement, particularly where the grids are inapplicable, *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) ("If the grids are inapplicable, the Secretary **must** seek expert vocational testimony."). In this case, in finding the grids inapplicable, the ALJ created a situation in which he was required to obtain vocational expert testimony to carry the Commissioner's fifth-step[3] burden and his failure to obtain such testimony constitutes reversible error.

The failure to obtain vocational expert testimony in this case is particularly glaring inasmuch as the lead job the ALJ identifies from the DOT

---

[3] The undersigned is of the opinion that in finding the grids inapplicable on the basis of the existence of only non-exertional limitations (Tr. 30), the ALJ implicitly decided that plaintiff's non-exertional limitations significantly eroded her occupational base at all exertional levels. Accordingly, the ALJ necessarily need obtain vocational expert testimony to establish the existence of jobs in the national economy that plaintiff can perform in light of her impairments and limitations.

as requiring no significant interaction with the general public, that is, work as a cleaner/housekeeper (Tr. 31), in fact requires the worker to render "personal assistance to patrons." An individual who must render personal assistance to patrons logically has significant interaction with the general public or, at the very least, the comparison of plaintiff's residual functional capacity with the DOT's description of cleaner/housekeeper creates a discrepancy which even the ALJ indicates would require the input of a vocational expert. (*See* Tr. 30 ("[D]etermining whether a claimant's residual functional capacity would be sufficient to perform an occupation described in the Dictionary of Occupational Titles (DOT) is a simple exercise in which the skill level and capabilities in the residual functional capacity are compared with the requirements detailed in the DOT. See SSR 00-4p. When the comparison shows **no conflict or discrepancy**, clearly no vocational testimony or judgment is needed.")) The Magistrate Judge is of the opinion that without input from a vocational expert in such circumstances, the Commissioner's fifth-step finding of no disability becomes mere intuition and conjecture.

Based upon the foregoing, this case must be remanded to the Commissioner of Social Security for further proceedings, including taking testimony from a vocational expert. It is only through such testimony that the Commissioner can satisfy her fifth-step burden of identifying what jobs, if any,

plaintiff can perform in light of her impairments and limitations.

## **CONCLUSION**

The Magistrate Judge recommends that the decision of the Commissioner of Social Security denying plaintiff benefits be be reversed and remanded pursuant to sentence four of § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision.  The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412,  *Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's

jurisdiction over this matter.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 12th day of August, 2005.

                     s/WILLIAM E. CASSADY
                     **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1. *Objection*. Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded)*. Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

        s/WILLIAM E. CASSADY
        UNITED STATES MAGISTRATE JUDGE